UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PPL ELECTRIC UTILITIES CORPORATION,<br><br>        Plaintiff<br><br>    v.<br><br>COTERRA ENERGY, INC., et al.,<br><br>        Defendants | CIVIL ACTION NO. 3:25-CV-794<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court are Defendants Coterra Energy Inc. ("Coterra") and Charles L.E. Wage, Esquire's ("Wage") (together, "Defendants") motions to dismiss for failure to state a claim. (Doc. 5; Doc. 7). On April 9, 2025, Plaintiff PPL Electric Utilities Corporation ("PPL") initiated this action by filing a complaint in the Court of Common Pleas of Susquehanna County, Pennsylvania. (Doc. 1-2, at 4-14). On May 6, 2025, Coterra removed this action to federal court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332(a). (Doc. 1, ¶¶ 4, 5). For the following reasons, Defendants' motions to dismiss shall be **GRANTED in part** and **DENIED in part**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the complaint and, for the purposes of the instant motion, is taken as true. (Doc. 1-2, at 4-14). PPL is an electric utilities company that leases real property in Susquehanna County, Pennsylvania to the energy company, Coterra for natural gas well drilling. (Doc. 1-2, ¶¶ 1-5). Coterra is the successor to Cabot Oil & Gas Corporation under the November 12, 2012, Oil and Gas Lease No. 37-17113 (the "Lease").

(Doc. 1-2, ¶¶ 4-5). The Lease has been renewed multiple times and remains in effect. (Doc. 1-2, ¶ 7).

Under the terms of the Lease, Coterra is obligated to pay PPL certain royalties based on the acres leased multiplied by PPL's royalty factor. (Doc. 1-2, ¶ 10). Paragraph Eleven of the Lease provides that:

> In case of any controversy or dispute regarding title to the premises or any part thereof, or regarding the ownership of any sums payable hereunder, Lessee shall have the right to withhold and retain without accrual of interest all sums payable hereunder (which are attributable to the portion or portions of the premises that are the subject of controversy or dispute) and which are subject to such controversy or dispute until the final determination of said controversy or dispute and then to distribute the same among those lawfully entitled thereto.

(Doc. 1-2, ¶ 12).

In March 2016, Wage represented individuals in a lawsuit disputing PPL's ownership of a portion of the property leased to Coterra ("Magnotti Matter"). (Doc. 1-2, ¶ 14-15). In May 2019, the Magnotti Matter was discontinued with prejudice. (Doc. 1-2, ¶ 17). As part of the resolution of the Magnotti Matter, PPL executed quitclaim deeds to the plaintiffs in Magnotti Matter for 43.614 total acres of PPL's property. (Doc. 1-2, ¶ 18). After the discontinuance of the Magnotti Matter, PPL retained 89.029 acres of real estate ("Residual Acreage") on which Coterra was obligated to pay PPL royalties under the Lease. (Doc. 1-2, ¶ 19). Coterra withheld certain royalty payments from PPL during the pendency of the Magnotti Matter, but when the Magnotti Matter concluded, Coterra released all suspended royalty payments owed under the Lease through August 2018 to PPL. (Doc. 1-2, ¶ 21).

Since the discontinuance of the Magnotti Matter, no other person or entity have filed any action disputing the ownership of PPL's Residual Acreage. (Doc. 1-2, ¶ 22). After the resolution of the Magnotti Matter, Coterra began withholding significant royalty payments

from PPL without explanation. (Doc. 1-2, ¶ 25). Coterra made several small payments to PPL under the Lease but have not explained what the payments are for. (Doc. 1-2, ¶ 24). In June 2023, Coterra sent PPL a series of letters stating that Coterra "shall withhold payment pending resolution of a title dispute or adverse claim asserted." (Doc. 1-2, ¶ 28). In July 2023, Coterra made a single royalty payment to PPL but has not made a royalty payment to PPL since. (Doc. 1-2, ¶ 30).

On August 22, 2023, PPL informed Coterra that there are no title disputes regarding the Residual Acreage and demanded payment of withheld royalties. (Doc. 1-2, ¶ 32). In response, Coterra requested information about the status of the Magnotti Matter, stating that proof of its conclusion "may facilitate a quick resolution for your clients' concerns." (Doc. 1-2, ¶ 33). On August 22, 2023, PPL provided Coterra with a copy of the 2019 discontinuance in the Magnotti Matter, adding that there is no pending title litigation against PPL in Susquehanna County. (Doc. 1-2, ¶ 34). Coterra continues to withhold royalty payments from PPL and earn interest on the withheld royalty payments. (Doc. 1-2, ¶¶ 35-36).

On April 9, 2025, PPL filed a complaint against the Defendants in the Court of Common Pleas of Susquehanna County. (Doc. 1-2, at 4-14). Therein, PPL alleges the following Counts: Count I – Declaratory Judgment under Pa. R.C.P. 1602 against Coterra (Doc. 1-2, ¶¶ 38-44); Count II – Breach of Contract against Coterra[1] (Doc. 1-2, ¶¶ 45-53); Count III – Unjust Enrichment against Coterra (Doc. 1-2, ¶¶ 54-57); and Count IV – Tortious Interference with Contractual Relations against Wage (Doc. 1-2, ¶¶ 58-61).

On May 5, 2025, Coterra removed the action to federal court. (Doc. 1). On May 12, 2025, Coterra filed a motion to dismiss PPL's claims for unjust enrichment and breach of

---

[1] PPL's second count is mislabeled as Count III. (*See* Doc. 1-2, at 10-11).

3

fiduciary duty, as well as a brief in support. (Doc. 5; Doc. 6). On May 13, 2025, Wage filed a motion to dismiss PPL's claim of tortious interference with contractual relations, as well as a brief in support. (Doc. 7; Doc. 8). On May 20, 2025, and May 22, 2025, respectively, PPL filed briefs in opposition to Defendants' motions to dismiss. (Doc. 9; Doc. 10). Coterra filed a reply brief on June 2, 2025, and Wage filed a reply brief on June 4, 2025. (Doc. 12; Doc. 13). Accordingly, the motions to dismiss have been fully briefed and are ripe for disposition.

II.     **MOTION TO DISMISS STANDARDS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

III. **DISCUSSION**

Coterra moves to dismiss PPL's claim of unjust enrichment and allegation of a fiduciary duty owed by Coterra to PPL. (Doc. 5). Wage moves to dismiss PPL's claim of tortious interference with a contractual relationship and claims for punitive damages, attorney's fees, and "such other relief as this Court deems just and equitable." (Doc. 7; Doc. 8). Accordingly, the Court will address each issue in turn.

    A.    PPL'S UNJUST ENRICHMENT CLAIM

In Count III, PPL alleges that Coterra was unjustly enriched by accepting and retaining royalty payments owed to PPL, and earning interest on the withheld payments, in violation of the Lease. (Doc. 1-2, ¶¶ 54-57). Coterra argues that PPL's unjust enrichment claim should be dismissed because a valid written agreement exists between the parties. (Doc. 6, at 7-11). PPL counters that its unjust enrichment claim stems from conduct outside the scope of the Lease. (Doc. 9, at 7-9).

Unjust enrichment is an equitable doctrine, in which a plaintiff seeks restitution for benefits conferred on and retained by a defendant who offers no compensation in return when compensation is reasonably expected. *Roethlein v. Portnoff Law Associates, Ltd.*, 81 A.3d 816, 285 n.8 (2013); *Powers v. Lycoming Engines*, 328 Fed. Appx. 121, 126 (3d Cir 2009) (nonprecedential) (collecting cases). The elements of an unjust enrichment claim are (1)

5

benefits conferred on one party by another, (2) appreciation of such benefits by the recipient, and (3) acceptance and retention of the benefits under such circumstances that it would be inequitable for the recipient to retain the benefits without the payment of their value. *Allegheny General Hosp. v. Phillip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000).

As an equitable remedy, a claim for unjust enrichment arises from a quasi-contract. *Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 687 (Pa. Super. Ct. 2022) (citing *Guttridge v. J3 Energy Grp. Inc.*, 165 A.3d 908, 916 (Pa. Super. Ct. 2017)). Therefore, the doctrine of unjust enrichment is typically inapplicable when the relationship between the parties is based on a written agreement or express contract. *Toppy*, 285 A.3d at 687 (quoting *Wilson v. Parker*, 227 A.3d 343, 353 (Pa. Super. Ct. 2020)). However, even with an express contract between the parties, a plaintiff may plead unjust enrichment in the alternative to a breach of contract claim. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009); *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315-16 (3d Cir. 2023) ("the Federal Rules of Civil Procedure permit unjust enrichment claims to be plead in the alternative where the existence or applicability of a contract is in dispute") (citing Fed. R. Civ. P. 8(d)(3)). A claim for unjust enrichment will also not be barred if it concerns conduct outside the scope of the original agreement or contract. *Liberty Mutual Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 542 (W.D. Pa. 2018); *Kraus Indus., Inc. v. Moore*, 06-00542, 2007 WL 2744194, at *8 (W.D. Pa. 2007); *see Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.3d 989, 999 (3d Cir. 1987).

PPL alleges that Coterra was unjustly enriched by accepting and retaining royalty payments owed to PPL and earning interest on the withheld payments in violation of the Lease. (Doc. 1-2, ¶ 55). Under the Lease, Coterra has the right to "withhold and retain without accrual of interest all sums payable hereunder… and which are subject to such controversy or

6

dispute until the final determination of said controversy or dispute." (Doc. 1-2, at 17). Therefore, the circumstances and ways in which Coterra is permitted to retain royalty payments are squarely within the scope of the Lease. *Cf., Gemma*, 301 F. Supp. 3d at 542 (finding adequality pled facts for unjust enrichment claim where plaintiff retained documents in an unjust fashion that was outside the scope of their employment contract); *Kraus Indus., Inc.*, 2007 WL 2744194, at *8 (declining to dismiss unjust enrichment claim because the alleged promise serving as the basis of the claim appears to be separate and distinct from the underlying contract). The validity of the Lease is undisputed, (Doc. 6; Doc. 9), and PPL does not plead unjust enrichment in the alternative to breach of contract. (Doc. 1-2, ¶¶ 54-57); *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315-16 (3d Cir. 2023) ("the Federal Rules of Civil Procedure permit unjust enrichment claims to be plead in the alternative where the existence or applicability of a contract is in dispute") (citing Fed. R. Civ. P. 8(d)(3)). Accordingly, the Court **GRANTS** Coterra's motion to dismiss regarding Count III. (Doc. 5).

      B.    COTERRA'S FIDUCIARY DUTY TO PPL

Under Count II, PPL's breach of contract claim, PPL asserts that Coterra has a fiduciary obligation to PPL. (Doc. 1-2, ¶ 53). PPL alleges that Coterra's fiduciary obligation includes accounting to PPL all sums paid and payable under the Lease. (Doc. 1-2, ¶ 53). PPL seeks an accounting of all royalty payments withheld from and due to PPL because PPL requires that information to calculate damages. (Doc. 1-2, ¶¶ 52-53).

Coterra argues that, to the extent PPL asserts a cause of action for breach of fiduciary duty, such a claim is barred by the gist of the action doctrine. (Doc. 6, at 12). PPL counters that it has not plead a claim for breach of fiduciary duty. (Doc. 9, at 9). PPL asserts that it instead included an allegation that Coterra owes PPL a fiduciary duty under the Lease in its

breach of contract claim. (Doc. 9, at 9). In its reply brief, Coterra alternatively asks this Court to enter an order barring PPL from asserting a breach of fiduciary duty claim in the future on the facts as alleged in the complaint. (Doc. 12, at 11-12). As PPL is not asserting a breach of fiduciary duty claim, Coterra's motion to dismiss PPL's breach of fiduciary duty allegation is **DENIED**. (Doc. 5). Additionally, the Court declines to enter an order barring PPL from asserting a breach of fiduciary duty claim in the future on the facts alleged in the complaint.

### C.   PPL's Tortious Interference with Contractual Relations Claim

Under Count IV, PPL alleges that Wage intentionally and maliciously interfered with PPL's contractual relationship under the Lease. (Doc. 1-2, ¶ 61). Wage moves to dismiss Count IV, arguing that the PPL fails to articulate facts to support the elements of a tortious interference claim, specifically Wage's intent and absence of privilege to interfere with the Lease. (Doc. 8, at 5). PPL counters that it alleges Wage took sufficiently improper actions to constitute tortious interference with contractual relations. (Doc. 10, at 16-19).

Under Pennsylvania law, a third party may be liable for intentional interference with a contractual relationship. *Acumed LLC v. Advanced Surgical Servs.*, Inc., 561 F.3d 199, 212 (3d Cir. 2009). The elements of a cause of action for tortious interference with a contractual relationship are (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damages as a result of defendant's conduct. *Acumed*, 561 F.3d at 212 (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.* 140 F.3d 494, 530 (3d Cir. 1998)). Wage asserts that PPL has failed to plead facts to support the second and third elements, intent and absence of privilege. (Doc. 8, at 6).

8

Regarding the second factor, intent, a defendant must have acted for the "specific purpose of causing harm to the plaintiff." *Phillips v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct. 2008) (quoting *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971)). Regarding the third factor, a defendant's actions lacked privilege or were improper, Pennsylvania courts consider factors from the Restatement (Second) of Torts § 767:

> (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.
>
> *See e.g. Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 934 (Pa. Super Ct. 2013).

A determination of absence of privilege or improper conduct is fact specific, with a central inquiry of whether defendant's conduct is "sanctioned by the rules of the game which society has adopted." *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971).

Here, to support its claim of tortious interference with a contractual relationship, PPL alleges that Wage is aware of the Lease, including the provision permitting the lessee to withhold payments in the instance of a title dispute, and that Wage communicated some title dispute or adverse claim on the Residual Property to Coterra. (Doc. 1-2, ¶ 37, 59). PPL further alleges that Wage's previous litigation, the Magnotti Action, concerns a title dispute with a portion of the Property, and Coterra withheld royalties from PPL during the pendency of the Magnotti Matter. (Doc. 1-2, ¶ 14-21). Coterra released the withheld royalties after the conclusion of the Magnotti Action, but since has been withholding royalties again. (Doc. 1-2, ¶¶ 21-25). In June 2023, Coterra sent PPL letters stating that Coterra has a right under the Lease to withhold royalty payments pending resolution of a title dispute or adverse claim

regarding the interest in the real estate subject to the Lease. (Doc. 1-2, ¶ 28). PPL has not received a single royalty payment from Coterra since July 2023. (Doc. 1-2, ¶ 30). In August 2023, when questioning Coterra about the withheld royalties, Coterra asked for proof that the Magnotti Action had in fact resolved. (Doc. 1-2, ¶ 33).

Taken as true, such facts plausibly show Wage's intent to harm PPL by interfering with the Lease. *See ITP, Inc. v. OCI Co.*, 865 F. Supp. 2d 672, 682 (E.D. Pa. 2012); *Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 935 (Pa. Super. Ct. 2013) (finding misrepresentations to subcontractors by client amount to tortious interference to contract between contractor and subcontractors)). Considering the factors from the Restatement (Second) of Torts § 767, PPL has pled facts showing the nature of Wage's conduct, the interests of PPL with which Wage's alleged conduct interferes, the proximity of Wage's conduct to the interference, and the relationship between the parties.[2] *See ITP, Inc.*, 865 F. Supp. 2d at 682' *Empire Trucking Co., Inc.*, 71 A.3d at 935. Accordingly, Wage's Motion to Dismiss PPL's claim of tortious interference with a contractual relationship is **DENIED**. (Doc. 7).

---

[2] In the alternative, Wage avers that PPL's tortious interference claim is time barred. (Doc. 8, at 9-11). A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion only when untimeliness is apparent on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). The statute of limitations for a tortious interference with contractual relations claim is two years. 42 Pa. C.S. § 5524 (7). Taking PPL's allegations as true, PPL first received notice of a reason for withheld payments in June 2023, and Coterra's questioning of the status of the Magnotti Matter on August 22, 2023. (Doc. 1-2, ¶¶ 28, 33). PPL filed its complaint on April 9, 2025. (Doc. 1-2, at 4). Therefore, there is nothing on the face of the complaint showing that PPL tortious interference claim is time barred and Wage's motion to dismiss based on the statute of limitations is **DENIED**. (Doc. 7).

D.   PPL's Claim for Punitive Damages

In Count IV, PPL's claim for tortious interference with contractual relations, PPL requests an award of punitive damages against Wage. (Doc. 1-2, ¶ 61). Wage argues that PPL fails to provide any facts showing reckless and malicious behavior, that would entitle PPL to impose punitive damages. (Doc. 8, at 13). PPL contends it adequately pleads entitlement to punitive damages at this stage of litigation. (Doc. 10, at 15).

The Supreme Court of Pennsylvania has adopted Restatement (Second) of Torts § 908(2), which permits punitive damages for "conduct that is outrageous, because of the defendant's evil motive or his reckless interference to the rights of others." *Feld v. Merriam*, 485 A.2d 742, 747-48 (1984) (quoting Rest. (2d) Torts § 908(2)). Outrageous conduct can be demonstrated by intentional, willful, wanton, or reckless conduct. *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (Pa. 1991). In determining whether an act or failure to act is outrageous, "[t]he state of mind of the actor is vital." *Feld*, 485 A.2d at 748. In Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act…in conscious disregard of that risk." *Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005).

Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Fiedler v. Stroudsburg Area Sch. Dist.*, 427 F. Supp. 3d 539, 558 (M.D. Pa. 2019) (quoting *Miller v. Helm*, No. 4:17-CV-01590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017)); see also *Jones v. Allied Servs. Skilled Nursing & Rehab Ctr.*, No. 3:23-CV-00725, 2024 WL 1533665, at *5 (M.D. Pa. Apr. 9, 2024). Given this allegation and the fact-intensive

nature of punitive damages, it would be premature to dismiss PPL's request for punitive damages at this early stage. *See Fiedler*, 427 F. Supp. 3d at 558; *see also Jones*, 2024 WL 1533665, at *5. Accordingly, Wage's motion to dismiss PPL's claim for punitive damages is **DENIED**. (Doc. 7).

### E. PPL's Claim for Attorneys' Fees

Under Count IV, PPL's claim for tortious interference with contractual relations, PPL requests attorney's fees from Wage. (Doc. 1-2, ¶ 61). Wage contends that PPL has not demonstrated its claim provides for the statutory right to recover attorney's fees. (Doc. 8, at 13-14). PPL does not oppose Wage's move to dismiss its claim for attorney's fees. (Doc. 10). Under Pennsylvania law, "attorney's fees are recoverable from an adverse party to a cause only when provided for by statute, or when clearly agreed to by the parties." *Fidelity-Philadelphia Trust Co. v. Philadelphia Transportation Co.*, 173 A.2d 109, 113 (1961). As PPL did not provide a statute or an agreement between the parties providing for payment of attorney's fees, Wage's motion to dismiss is **GRANTED** regarding PPL's claim for attorneys' fees. (Doc. 7).

### F. PPL's General Prayer for Relief

Under Count IV, PPL's claim for tortious interference with contractual relations, PPL requests "such other relief as this Court deems just and equitable." (Doc. 1-2, ¶ 61). Wage argues that PPL's prayer for general relief amounts to special damages and should be dismissed because PPL failed to allege facts upon which a request for special damages could be based. (Doc. 8, at 14-15). PPL counters that their prayer for general relief is entirely appropriate and should not be dismissed. (Doc. 10, at 21)

Under a prayer for general relief "the court may grant any appropriate relief that conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by special prayer." *Linde v. Linde*, 220 A.3d 1119, 1148 (Pa. Super. Ct. 2019) (quoting *Lower Frederick Twp. v. Clemmer*, 543 A.2d 502, 512 (Pa. 1988)). General damages may be proven without specifically pleading them. *Hooker v. State Farm Fire and Cas. Co.*, 880 A.2d 70, 77 (Pa. Commw. Ct. 2005). Additionally, under FED. R. CIV. P. 54(c), "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

PPLs request for "such other relief as this Court deems just and equitable," is a boilerplate prayer for general relief. *See e.g.*, 16 Fed. Proc. Forms § 65:363; *DeAngelo Bros., Inc. v. Long*, 2005 WL 1309037, at *1 (M.D. Pa. 2005); *O'Malley v. O'Malley*, 2008 WL 11366282, at *2 (M.D. Pa. 2008). As PPL does not seek special damages under the disputed request, its general prayer for relief need not allege facts upon which a request for special damages could be based. *Linde*, 220 A.3d at 1148. Therefore, Wage's motion to dismiss PPL's claims for "such other relief as this court deems just and equitable" is **DENIED**. (Doc. 7).

## IV. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). The Court will grant leave to amend regarding Count III and PPL's claim for attorney's fees.

Regarding Count III, PPL's unjust enrichment claim, amendment is not futile because PPL could theoretically allege that Coterra was unjustly enriched by activities falling outside the scope of the Lease. *Gemma*, 301 F. Supp. 3d at 542; *Kraus Indus., Inc.*, 2007 WL 2744194, at *8. Amendment of PPL's claim for attorney's fees is not futile because PPL could theoretically identify a statute or contractual provision which provides a basis for attorney's fees. *McMullen v. Kutz*, 985 A.2d 769, 775-76 (Pa. 2009) (finding that a plaintiff may be entitled to attorneys' fees if they establish "express statutory authorization, a clear agreement of the parties or some other established exception" which entitled them to the fees). As such, leave to amend Count III and PPL's claim for attorneys' fees is **GRANTED**.

V.      **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED in part** and **DENIED in part.** (Doc. 5; Doc. 7). Coterra's motion to dismiss Count III is **GRANTED**. (Doc. 5). Coterra's motion to dismiss PPL's allegation of a fiduciary relationship between Coterra and PPL is **DENIED**. (Doc. 5). Wage's motion to dismiss PPL's claim for attorney's fees is **GRANTED**. (Doc. 7). Wage's motion to dismiss Count IV and PPL's claims for punitive damages and "such other relief as this Court deems just and equitable" is **DENIED**. (Doc. 7). Count III and PPL's claim for attorney's fees are **DISMISSED without prejudice.** (Doc. 1-2). PPL is granted leave to file an amended complaint within 21 days, on or before February 28, 2026. An appropriate Order follows.

                                                            BY THE COURT:

Dated: February 7, 2026                                     *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **United States District Judge**